W. W. LANGFORD, *et al., Appellants,* v. PEYTON R. READ, *Appellee.*

Opinion Filed February 23, 1915.

1. When a general replication is filed to an answer in chancery, it thereby puts in issue all the matters alleged in the bill and denied in the answer, and it is incumbent upon the complainant to prove all such matters by at least a preponderance of the evidence, the oath to the answer being waived.

2. Where a bill in equity is filed for the enforcement of a lien for the remainder of a sum alleged to be due the complainant on a contract for the construction of a building and also for certain extra work done and materials furnished outside of such contract, and answers are filed by the defendants in which the material allegations of the bill are denied, and the evidence establishes the fact that the complainant, at the request of the agent or business manager of the defendants having such building constructed, submitted a written bid to the effect that he would construct the same for a specified sum, which written bid was submitted to the principals and owners who accepted and relied thereon, and that the complainant has been paid not only the amount of such written bid but a sufficient sum in addition thereto to cover all his

charges for extra work, the complainant is not entitled to the enforcement of a lien for any further sum by reason of the fact that such written bid so submitted by the complainant was "a sham bid," according to his own testimony submitted at the request of such agent, and did not represent the real contract made by the complainant and such agent, when there is no testimony that the principals and owners were ever informed that such written bid was "a sham bid." He who comes into a court of equity must come with clean hands.

Appeal from Circuit Court for DeSoto County; F. A. Whitney, Judge.

Decree reversed.

*J. W. Burton* and *John C. Cooper & Son,* for Appellants;

. *W. F. Himes* and *C. C. Whitaker,* for Appellee.

SHACKLEFORD, J.—Payton R. Read filed his bill in chancery against Mary P. Simmons and William H. Simmons, her husband, Washington W. Langford and the DeSoto National Bank, a corporation, by which it was sought to foreclose a lien for the remainder of a sum alleged to be due the complainant on a contract for the construction of a building on certain described real estate in the town of Arcadia, Florida, and also for certain extra work done and materials furnished outside of such contract. All of the defendants attacked the bill by separate demurrers, which were overruled, whereupon the defendants filed separate answers in which they denied the material allegations of the bill. Replications were filed to the answers and a special master was appointed to take such testimony as might be adduced by

the respective parties. The cause came on for a final hearing upon the testimony so taken and upon the pleadings and the following final decree was rendered:

"This cause coming on for final hearing upon the pleadings and oprceedings heretofore had in this cause, including the testimony taken before A. F. Odlin, Special Master in Chancery heretofore appointed herein, and the court having heard the argument of counsel for the complainant and for the defendants and having considered the same and being advised.

It is thereupon ordered, adjudged and decreed that there remained due to the complainant at the time of the filing of the bill of complaint in this cause the sum of Eight Thousand One Hundred Sixty-three and 61/100 Dollars as the unpaid balance owing to the complainant upon the contract made and entered into between the said complainant and Simmons, Langford & Company for the construction upon the premises described in the bill of complaint of the building therein mentioned and referred to; that at the time of making and entering into between the said complainant and the said Simmons, Langford & Company of the contract for the construction of the said building upon the said premises, the said firm of Simmons, Langford & Company was composed of the defendant, Mary P. Simmons, a married woman, and the defendant Washington W. Langford, and that the said Mary P. Simmons and said Washington W. Langford were then and there the owner each of an undivided one-half interest in and to the said premises; that the said premises were conveyed prior to the filing of the bill of complaint in this cause by the said Washington W. Langford, joined by his wife, and the said

Mary P. Simmons, joined by her husband, to the DeSoto National Bank, a corporation, one of the defendants; that the said DeSoto National Bank acquired all its title and interest in and to the said premises while the construction by the said P. R. Read of the said building upon the premises described in the bill of complaint was in progress, and the said defendant is a purchaser of the said premises with notice of the lien of the complainant, and the lien of the complainant is superior and paramount to the interest of the defendants as to an undivided one-half interest in and to the said premises; that the said Mary P. Simmons, at the time of the making of the contract with the complainant and the construction of the said building and the sale of the said property to the DeSoto National Bank, a married woman is not liable to a personal decree for the payment of any portion of the indebtedness due to the complainant nor is the undivided one-half interest which she held in said premises and conveyed to the DeSoto National Bank prior to the filing of this bill of complaint subject to be charged in equity and sold for the moneys due the complainant; that the defendant Washington W. Langford is subject and liable to a decree for the payment of said moneys due the complainant and that the complainant holds a lien for the payment of the said moneys upon the undivided one half interest in the said premises sold and conveyed by the said Washington W. Langford to the defendant, the DeSoto National Bank, and the complainant is entitled to a decree for the payment of reasonable attorneys' fees for the enforcement of the said lien, which attorneys' fees from the testimony is hereby fixed and allowed at ten per cent of the amount due and owing to the complainant and that as to right of the complainant to a lien on the undivided one-half

interest above mentioned for the payment of the said moneys due and owing as aforesaid and to enforce the same by his bill herein the equities of this cause are with the complainant.

It is further ordered, adjudged and decreed by the court that it appears from the testimony there are pending by sub-contractors or material men three suits for moneys alleged to be owing to them by the complainant on account of work done and materials furnished to the complainant in the building of said building and that the amounts due to the said parties are as follows, to-wit: J. H. McQueen, Four Hundred Six and 71/100 Dollars with interest at the rate of eight per cent per annum from September 20th, 1907; to Frank Dyke Three Hundred Sixty Dollars with interest from the date last mentioned; to Carolina Portland Cement Company Two Hundred Forty-one and 90/100 Dollars with interest from said last mentioned date, and that in said suits the complainants are entitled to recover for attorneys' fees the further sum of ten per cent of the present amounts of their said claims and that the total costs of the court in said suits do not exceed the sum of Fifteen Dollars, and that there are no other claims for moneys by any other sub-contractors or material men which are liens or charges against the premises described in the bill of complaint, and that by reason of the expiration of more than six years since the completion of the said building, no further suits can be brought to charge the same premises by material men or sub-contractors; that the complainant is willing and offers that the said claims with suit costs shall be paid off out of the moneys due and owing to the complainant for the construction of the said building as hereinbefore mentioned, and that by the said moneys due the complainant herein being

decreed to be paid to a Master of this court who shall first pay off the said claims and then pay the remaining surplus to the complainant, the court can effectually protect all rights of the defendants to this suit.

It is therefore ordered, adjudged and decreed that the defendant Washington W. Langford within 10 days from this date do pay the sum of Eight Thousand One Hundred Sixty-three and 61/100 Dollars, together with interest at the rate of eight per cent per annum since the institution of this suit, to-wit, the sum of Twelve Thousand Five Hundred Seventeen and 53/100 Dollars, and the further sum of ten per cent thereof for attorney fees, to-wit, the sum of One Thousand Two Hundred Fifty-one and 75/100 Dollars, to A. F. Odlin who is hereby appointed as Special Master in Chancery to receive the said moneys, and that the complainant P. R. Read has and holds and is hereby decreed to have and hold a first lien for the payment of the said moneys upon an undivided one-half interest in and to the premises described in the bill of complaint in this cause and the improvements thereon, to-wit: Lots A, B, C and E and the E ½ of Lot F in Simons and Carlton's sub-division of Lots 1 and 2 and a part of Lot 3 in Block 4 of Waldron's subdivision of Arcadia in the County of DeSoto in the State of Florida, as appears from plat thereof of record in the office of the clerk of said DeSoto County. That the said A. F. Odlin out of any moneys so received by him from the said Washington W. Langford or a sale of the premises hereinafter decreed, shall pay to the said J. H. McQueen, Frank Dyke and Carolina Cement Company, the several moneys hereinbefore mentioned and allowed and the costs of the said suits and obtain releases from said last mentioned parties of the premises mentioned in the

bill of complaint and the dismissal of the said suits, and shall then pay to. the complainant the balance of the said moneys decreed to be paid herein in. his favor.

It is further ordered, adjudged and decreed that in default of the payment by the said Washington W. Langford of the moneys above mentioned, that an undivided one-half interest in the premises above described and mentioned in the bill of complaint, shall be sold to realize the said moneys by the said A. F. Odlin who is hereby appointed as Special Master to make the said sale, in front of the court house door at- Arcadia, in DeSoto County, Florida, on a legal sales day at public outcry to the highest and best bidder for cash after he shall have given notice by advertisement thereof once each week for four consecutive weeks in some newspaper published in said DeSoto County, specifying a description of the said property, and the time and place of said sale; and out of the proceeds derived from the said sale, the said Special Master shall pay to the parties hereinbefore mentioned the respective sums hereinbefore referred to, and costs, charges and expenses of the said sale, the cost of this suit to be taxed by the clerk of this court, and shall then pay to the complainant or his solicitors of record the amounts hereinbefore decreed to be paid to the complainant less the amounts ordered to be paid therefrom by the said Master to the said sub-contractors or material men hereinbefore first mentioned, and any surplus remaining shall be by the said Master brought into the registry of the court to await its further order in the premises; that upon the making of any sale by the said Master under this decree, the said Master shall first report the same to this court for confirmation and upon confirmation thereof, shall execute and deliver to the purchaser or purchasers

a good and sufficient deed of conveyance upon the payment of the amount bid at the said sale and that in the event of the sale of an undivided one-half interest in said premises as herein decreed, that the defendants to this suit and all other persons claiming any interest therein under the said defendants subsequent to the institution of this suit shall be barred and foreclosed of all equity of redemption and right, title and interest therein and thereto.

Done and ordered at Chambers at Arcadia, Florida, on this 10 day of June, 1914."

From this decree Washington W. Langford and the DeSoto National Bank, a corporation, two of the defendants, have entered their appeal and have assigned ten errors.

The construction of this building has been prolific of litigation. See DeSoto National Bank v. Arcadia Electric Light, Ice & Telephone Company, 57 Fla. 391, 48 South. Rep. 745; Ibid., 59 Fla. 479, 52 South. Rep. 612; Langford v. South Florida Lumber & Supply Co. 63 Fla. 484, 59 South. Rep. 12; South Florida Lumber & Supply Co. v. Read, 65 Fla. 61, 61 South. Rep. 125. We find many conflicts in the testimony given by the witnesses for the complainant and the defendants which are simply irreconcilable, but from out of this chaos certain important facts seem to clearly emerge. Mary P. Simmons, a married woman, and Washington W. Langford were engaged in conducting a private banking business in the town of Arcadia, under the name and style of Simmons, Langford & Company, which business was under the active management of William H. Simmons, the husband of Mary P. Simmons. While so engaged in such banking

business the firm of Simmons, Langford & Company decided to have a building erected upon certain described lots, situated in the town of Arcadia, the title to which stood in the name of Mary P. Simmons and Washington W. Langford, and negotiations to that end were entered into between William H. Simmons, acting as the agent and business manager for Simmons Langford & Company, and Peyton R. Read, the complainant, which resulted in a contract being made by and between such parties. The terms of such contract are in dispute and the testimony therein is contradictory. The complainant alleges in his bill that a verbal or oral contract was made and entered into by him and Simmons, Langford & Company, by which the complainant agreed to construct the building, according to plans and specifications mutually agreed upon, for the sum of $24,229.75, which amount Simmons, Langford & Company agreed to pay the complainant; that the complainant entered upon the construction of such building at such contract price and while so engaged Simmons, Langford & Company decided to have certain changes made in the plans and specifications, which amounted in the aggregate to an additional cost of $2,920.08, thereby making the total cost of the building $26,420.08; that certain payments were made to the complainant from time to time as the work progressed on the building, which amounts are set out, but that there still remained due the complainant on such contract and for such extra work and materials the sum of $8,163.61; which the defendants refused to pay and for which the complainant claimed a lien on the building. As we have previously stated, the defendants in their answers deny practically all the material allegations of the bill. The making of the contract alleged in the bill is positively denied.

On the contrary, it is averred that, in response to requests for bids for the construction and erection of the building, the complainant submitted in writing the following bid:

"Arcadia, Florida, May 28, 06.

"P. R. REED,
GENERAL CONTRACTOR AND. BUILDER

Simmons, Langford & Company,
   City.

Gentlemen:—

I will furnish all the labor and material necessary to construct your bank building in a first-class workman-like manner, and in accordance with your plans, for the sum of $15,000.00.   Will furnish bond as required and do so promptly.                     Yours truly,
                                P. R. READ."

It is further averred that this bid was accepted and constituted the contract between the complainant and Simmons, Langford & Company for the construction of the building.

We find that the complainant, on cross-examination, admitted that he signed the written bid which we have copied above, but by way of explanation, testified as follows:

"Q.   Mr. Read, did you ever make any written bid for the construction of that building?   A.   I did not.   Q. (handling witness paper) You will examine that paper and see if you submitted that to Simmons Langford & Company?   A.   I signed it but I din't prepare it.   Q. Was this paper which I have handed to you, to be marked

Defendant's Exhibit Number 1, submitted by you to Simmons Langford & Company? A. Well no. It was this. Mr. Simmons prepared that paper and had it in his bank and called me in there for me to sign it and I signed it for him and I want to tell my reason for signing it. Mr. Rawles had been begging him to let him bid on the building and he said Rawles had taken his money out of the First National Bank and put it in his and he said, 'you have got the contract anyway and you just sign this and it will be all right,' and I signed it. It was just a sham bid. Q. It was prepared on your stationary? A. (examining paper) It looks like it. Q. And you signed it? A. For Mr. Simmons, in his bank, yes, sir.  Q. Were you present when this was presented and opened? A. I was not. Q. Do you know where it was presented and opened? A. No sir.

And thereupon the defendants, by their attorneys, offer in evidence the paper last above referred to. To the introduction of which said paper in evidence the complainant, by his attorneys, did then and there object for the reason that same is irrelevant and immaterial. Whereupon the said paper was duly filed in evidence by the Master, subject to the said objection, and marked Defendant's Exhibit, Number 1. Q. Was that paper which I have just handed you signed prior to or subsequent to the contract you have just testified about? A. It was signed way after the contract was let and I had bought some fifty thousand feet of lumber and I had bought all the shell for the foundation and Mr. Simmons had advanced me five hundred dollars in money to buy land with. Q. Did any other parties make bids on that building except yourself? A. I understood Rawles and a man by the name of........... let me see, what is his name, I

can't think of his name, I have forgotten it. Q. Did you know whether they had made their bids on the estimates that the architects had furnished or not? A. I couldn't tell you whether they did or not."

We further find that both W. W. Langford and Mrs. Mary P. Simmons, the owners of the land upon which the building was erected and who constituted the firm of Simmons, Langford & Company, testified that this written bid was submitted to them by William H. Simmons and that they knew of no other contract made by W. H. Simmons with the complainant for the construction of the building. Mrs. Simmons further testified that this being the lowest bid she authorized its acceptance. W. H. Simmons testified that written bids from two other contractors were submitted for the construction of the building for about $17,000.00 each and that the bid of the complainant was accepted because it was the lowest, and. also testified that he never made any contract with the complainant for the construction of the building in excess of $15,000.00, the amount of complainant's written bid.

There is no testimony whatever that either Mrs. Simmons or Langford ever were informed by W. H. Simmons, by the complainant or any one else that the complainant's written bid to construct the building for $15,000.00 was "a sham bid." The testimony of Mrs. Simmons, W. H. Simmons and Langford upon the points which we have just summarized would seem to stand uncontradicted. The complainant has been paid not only $15,000.00, the amount of his written bid, but a sufficient sum in addition thereto to cover all of his charges for extra work.

As we have previously said, there are many conflicts in

the testimony, but we deem further discussion of it unnecessary. While it is true that the bill expressly waived the oath to the answers, it still remained incumbent on the complainant to prove the material allegations of his bill by a preponderance of the evidence. Lykes v. Beauchamp, 49 Fla. 333, 38 South. Rep. 603. A careful examination of all the evidence has impelled us to the conclusion that the complainant has failed to do this. Moreover he has not come into equity with clean hands. He stands self-confessed of having put in a "sham bid," at the request of W. H. Simmons, who was simply the agent or business manager of Simmons, Langford & Company, the principals and owners. It becomes unnecessary to discuss the errors assigned in detail. It follows from what we have said that the final decree must be reversed, and it is so ordered, with directions to dismiss the bill.

Decree reversed.

TAYLOR, C. J., AND COCKRELL, WHITFIELD AND ELLIS, JJ., concur.